UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FT. MYERS DIVISION

TRISTAN N. BISHOP,

                Plaintiff,

vs.                                          Case No. 2:12-cv-00333-JES-DNF

CAROLYN W. COLVIN,
Acting Commissioner of Social Security[1],

                Defendant.
_____

## REPORT AND RECOMMENDATION

**TO THE UNITED STATES DISTRICT COURT**

      Plaintiff, Tristan N. Bishop, seeks judicial review of the final decision of the Commissioner of the Social Security Administration ("Commissioner") denying her claim for a Period of Disability, Disability Insurance Benefits ("DIB"), and Supplemental Security Income ("SSI").[2]  The Commissioner filed the Transcript of the proceedings (hereinafter referred to as "Tr." followed by the appropriate page number), and the parties filed legal memoranda in support of their positions.  For the reasons set forth herein, the decision of the Commissioner is **REVERSED** and **REMANDED** pursuant the Social Security Act, 42 U.S.C. § 405(g).

---

[1] Carolyn W. Colvin became the Acting Commissioner of Social Security on February 14, 2013. Pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure, Carolyn W. Colvin should be substituted, therefore, for Commissioner Michael J. Astrue as the defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).
[2] The disability definitions for DIB and SSI are identical; cases under one statute are persuasive as to the other. *Paterson v. Bowen*, 799 F.2d 1455, 1456 n.1 (11th Cir. 1986); *McCruter v. Bowen*, 791 F.2d 1544, 1545 n. 12 (11th Cir. 1986).

## I.     Background

### A.     Procedural History

On June 5, 2009, Plaintiff filed applications for a period of disability, disability insurance benefits, and supplemental security income. Plaintiff alleges disability beginning March 12, 2009.  Her claims were denied on October 15, 2009, (Tr. 11), and denied upon reconsideration on February 25, 2010. *Id.*   On April 27, 2011, a hearing was held before Administrative Law Judge ("ALJ") M. Dwight Evans. The ALJ's decision, dated July 27, 2011, denied Plaintiff's claim for benefits, finding that Plaintiff was capable of performing past relevant work and, alternatively, other work available in the national economy. (Tr. 11-20).  On May 9, 2012, the Appeals Council denied Plaintiff's Request for Review after receiving additional medical reports, (Tr. 1-3), thus making the ALJ's decision the final decision of the Commissioner.

### B.     Standard of Review

The scope of this Court's review is limited to determining whether the ALJ's decision applied the correct legal standards and whether the findings are supported by substantial evidence. *Lewis v. Callahan*, 125 F.3d 1436, 1439 (11th Cir. 1997). The Commissioner's findings of fact are conclusive if supported by substantial evidence.   42 U.S.C. § 405(g). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate support to a conclusion." *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011).

Where the Commissioner's decision is supported by substantial evidence, the District Court will affirm, even if the reviewer would have reached a contrary result as fact finder, and even if the reviewer finds that a preponderance of evidence contradicts the Commissioner's decision. *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996). The District Court must not

make credibility determinations, reweigh the evidence, or substitute its judgment for that of the Commissioner. *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005). However, an ALJ's failure to apply the correct law or to provide the reviewing court with sufficient reasoning to determine that the proper legal analysis has been conducted mandates reversal. *Cornelius v. Sullivan*, 936 F.2d 1143, 1145-1146 (11th Cir. 1991).

## II.   Review of Facts

### A.   Background Facts

Plaintiff was forty-six (46) years old at the time of the ALJ's decision. (Tr. 31). She held a four-year bachelor's degree. *Id.* She had worked as a catering specialist and a data entry clerk. (Tr. 33-35). Plaintiff alleges disability due to anxiety, degenerative back disease, bursitis, neuropathy, Morton's neuroma, diabetes, and carpal tunnel. (Tr. 37-38, 42-43). Furthermore, Plaintiff feels she is unable to work because she is terrified of experiencing harassment. (Tr. 36-37). In 2009 she went on leave under the Family Medical Leave Act ("FMLA") because of distress and anxiety. (Tr. 34-35). Plaintiff alleges that her employer would not permit her to return to work and instead asked her to file a workmen's compensation claim, which Plaintiff did not do. (Tr. 35-36).

### B.   Plaintiff's Testimony

Present at the hearing on April 27, 2011, were the ALJ, Plaintiff, and Plaintiff's Counsel. (Tr. 28). Plaintiff testified about her general background including age, weight, height and educational experience. (Tr. 31-32). She testified that she was married and lived in a home with her husband and his roommate. (Tr. 31).

Plaintiff alleged that she stopped working in March 2009. She used three vacation days to celebrate her deceased father's birthday "in a special way, not work" and then took four weeks of

FMLA leave because she was "in distress." (Tr. 34-35). Plaintiff testifies that her employer demanded she be evaluated by a worker's compensation doctor and would not allow her to return to work when she refused. (Tr. 35, 56-57). Plaintiff now feels that she is unable to work because she is "terrified to have another job," (Tr. 36), citing alleged incidents of sexual harassment and verbal and physical abuse. (Tr. 36-37). Plaintiff testified that she has panic attacks "pretty much every day," in which she gets nervous and then "really sick." *Id*. Her lack of money, lack of employment, unhappy marriage, and alleged abuse cause her anxiety. (Tr. 38).

With respect to her physical medical problems, Plaintiff testified that she has degenerative back disease, bursitis in her hips, and neuropathy in her foot and Morton's neuroma. *Id*.

Plaintiff's back pain is aggravated by standing, walking or lifting. (Tr. 39). She testified that she can only stand for a very short time, cannot walk very far, can only sit for about 15 minutes before she needs to change positions, and cannot lift anything over ten pounds. *Id*.

Plaintiff testified that she has constant pain in both hips every day and rated the pain at 8.5 on a scale of 10. (Tr. 40-41). She asserted that she takes pain medication and uses ice to relieve the pain. (Tr. 41).

Plaintiff testified that she has been to the emergency room twice for her diabetes. (Tr. 46). Diabetes and a neuropathy in both feet cause pain that Plaintiff described as constant and rated at 10 on a scale of 10. (Tr. 42-43). Plaintiff alleged that she has carpal tunnel in her left wrist. (Tr. 43). Plaintiff said that her psychiatrist prescribed her medication to help her sleep. *Id*.

Plaintiff takes the following medications. (Tr. 44). Diazepam is for anxiety. *Id*. Seroquel XR and Temazepam were prescribed to help her sleep. (Tr. 43-44). She takes Percocet 7.5 for pain. *Id*. She also uses Metformin and Victoza for diabetes. *Id*.

Plaintiff testified that her main treating doctor is Dr. Hanson, who sees her as-needed for all of the ailments to which she testified. (Tr. 45). She received mental health treatment from Dr. Valenzuela, a psychiatrist, and Ms. Leslie Palumberic, a Licensed Clinical Social Worker. She stopped seeing them because she lost her insurance. *Id.*

Plaintiff was asked about her ability to take care of her personal needs. (Tr. 47). She testified that she takes her medications as prescribed, and that she can bathe if she lies down in the shower to prevent falls. (Tr. 48). She does laundry once a month and goes to the grocery store once a week, but she no longer does household cleaning. *Id.* Her social life has changed in that she no longer attends church, visits friends, or plays tennis. (Tr. 49). Overall, Plaintiff testified that her condition is staying the same. (Tr. 50).

Plaintiff asserted that she has not worked since March 12, 2009, her alleged disability date. (Tr. 73-74). She testified that she has not received short-term or long-term disability payments, but she received unemployment compensation until May 2011. (Tr. 70-71). Plaintiff testified that she never wanted to leave her job. (Tr. 77).

### C.    Plaintiff's Medical History

*Back Pain*

Plaintiff has had back pain since 2001. (Tr. 285). She underwent surgery on her back in 2001. Though the surgery allowed her to walk again, her back pain continued. Plaintiff described her chronic back pain as 10 out of 10 on September 26, 2009. *Id.* She also developed bilateral trochanteric bursitis, which she rated 10 out of 10 on the same date. (Tr. 285-87).

From June 11, 2007, to March 11, 2011, Plaintiff received treatment at the Anchor Health Center from Dr. Robert Hanson. (Tr. 245-275; 307-320; 360-367). On December 13, 2007, Plaintiff presented with chronic back and right flank pain as a result of an injury that occurred on

5

December 9, 2007. (Tr. 267). The pain was described as "sharp and spasm" and "aggravated by walking and twisting." (Tr. 267). Other symptoms included "decreased mobility, limping, tenderness, and weakness." (Tr. 267). Plaintiff was prescribed Lidoderm and Flexeril. (Tr. 268).

On September 9, 2008, Plaintiff presented with an "acute flare of her back pain" which seemed triggered by stress. (Tr. 259). The physical examination revealed "tenderness about the right S1 joint into the buttocks," muscle spasms, and "pain with straight leg raise." (Tr. 260). Dr. Hanson injected "one of the painful areas" of Plaintiff's back and prescribed Plaintiff with Percocet, Medrol, and Ibuprofen. *Id*. An x-ray of the lumbar spine revealed "moderately severe degenerative disc disease at L5-S1 with light retrolisthesis of L5 with respect to S1 of approximately 5 mm, likely on a degenerative basis" and "facet arthropathy at the lumbosacral junction." (Tr. 275).

On April 17, 2009, Dr. Hanson reported that Plaintiff's back pain symptoms were "controlled." (Tr. 252). However, Plaintiff had a slip and fall accident on May 3, 2009, and her symptoms returned. (Tr. 249-50). Dr. Hanson prescribed Percocet to control her pain. (Tr. 250). Dr. Hanson said Plaintiff has "chronic back pain with heavy emotional overlay." (Tr. 246). He renewed the Percocet prescription but emphasized that he could not prescribe it long term. *Id*.

On July 12, 2010, Plaintiff reported to Dr. Hanson that she was experiencing chronic back pain after another fall. (Tr. 362). Plaintiff had been taking valium and Percocet and was "disoriented and forgetful." *Id*.

Plaintiff's most recent visit to Dr. Hanson contained in the record was on March 11, 2011. (Tr. 360). At that time, Dr. Hanson reported her chronic problems as "depressive disorder, lumbosacral spondylosis, elevated WBC, back pain, hyperlipidemia, and migraines." *Id*. Her

active medications included "Metformin, Triamcinolone Acetonide, Mobic, Valium, Percocet, Temazepam, Pravachol, Topamax, and Fluoxetine." *Id.*

**Diabetes**

Plaintiff was diagnosed with type 2 diabetes and hyperlipidemia on October 2, 2009. (Tr. 316-317). Plaintiff further reported neuropathy in her feet, *Id.*, and Dr. Hanson diagnosed Plaintiff with edema. (Tr. 317). He reported that Plaintiff could not "tolerate" the medication for either condition. (Tr. 316). On July 12, 2010, Plaintiff's diabetes and hyperlipidemia remained acute. (Tr. 363).

**Mental Health Conditions**

Plaintiff consistently reports anxiety and stress, which seem to aggravate her back pain. (Tr. 257). Leslie Palumberic, LCSW provided Plaintiff with mental health treatment from March 17, 2009, to June 16, 2009. (Tr. 349-359). Although Ms. Palumberic ruled out paranoid personality disorder from March 17, 2009-April 14, 2009, (Tr. 358-59), she diagnosed Plaintiff with paranoid personality disorder on April 21, 2009, and consistently thereafter. (Tr. 349-350, 352-355). In her sessions with Ms. Palumberic, Plaintiff complained of "work stress," (Tr. 359), "paranoia," *Id.*, "anxiety" (Tr. 352-55, 359), "conflict with her roommate," (Tr. 356), and depression. (Tr. 352-355). On one occasion, Ms. Palumberic reported that Plaintiff was "lethargic" and exhibited "difficulty staying on task." (Tr. 358).

Plaintiff also reported her mental health concerns to Dr. Hanson, who managed her mental health medication. Plaintiff's depression was often associated with sadness about her father's passing. (Tr. 253, 257-58). Dr. Hanson assisted Plaintiff with FMLA forms, (Tr. 256-58) and Plaintiff took FMLA leave for four weeks. Plaintiff reported harassment and "a hostile work environment" to Dr. Hanson. (Tr. 253-255). Plaintiff reported that these work issues caused her

"anxiety," "anxiety attacks," and paranoia. (Tr. 253, 255). Dr. Hanson noted that despite her mental health issues, Plaintiff was "consolable," (Tr. 257-58, 365), and he listed her distress as "mild" (Tr. 253) or "under no apparent distress." (Tr. 251, 360). He further consistently noted that she was "well-nourished" and "well-developed." (Tr. 251, 253, 257-58, 314, 316, 360, 365).

Dr. Hanson reported on April 17, 2009, that Plaintiff was ready to go back to work after her FMLA leave. (Tr. 251). He concluded that Plaintiff's stress and emotional condition was "improved," and her depressive disorder and back symptoms were "controlled." (Tr. 252). However, on April 21, 2009, Ms. Palumberic diagnosed Plaintiff with paranoid personality disorder. *Id*. After a slip-and-fall accident on May 3, 2009, Dr. Hanson noted that Plaintiff's mental health issues seemed to return. (Tr. 245-46, 249-50). On July 27, 2009, Dr. Hanson completed a Supplemental Mental Impairment Questionnaire. (Tr. 277). He reported that Plaintiff suffers from a mental impairment that significantly interferes with her daily functions and has been prescribed Fluoxetine and Valium. *Id*.

On February 26, 2010, Plaintiff presented with complaints of "anxiety." (Tr. 364). Dr. Hanson noted that her depressive disorder was "worse." (Tr. 365). However, Plaintiff reported that "it was not difficult at all to meet home, work or social obligations." *Id*. Again, Plaintiff was "crying but consolable." Plaintiff appeared "well nourished," but her appearance was "slovenly." *Id*.

Plaintiff married on June 17, 2010. On March 11, 2011, Plaintiff reported to Dr. Hanson that her husband was "physically and verbally abusive," (Tr. 360), and he recommended that she call a shelter for abused women for help. (Tr. 361).

      **D.**    **State Requested Evaluations and Reviews**

On September 22, 2009, Dr. Nilsa Rivera performed a consultative examination at the request of the Social Security Administration ("SSA"). (Tr. 281). Diagnosis of Plaintiff included Panic Disorder with Agoraphobia and Adjustment Disorder with Anxious and Depressed Moods. (Tr. 283). Dr. Rivera determined that Plaintiff had a global assessment functioning (GAF) of 50. *Id*. Dr. Rivera ruled out Major Depression, Recurrent, Severe, with Psychotic Features. *Id*. Further, Plaintiff appeared capable of managing her personal finances, self-care and health decisions.

On September 26, 2009, Dr. A. Neil Johnson performed a consultative evaluation of Plaintiff at the request of SSA. (Tr. 285). He observed that Plaintiff walked slowly and had "mild unsteadiness with a small stepped gait." (Tr. 286). Plaintiff was "in a lot of pain." *Id*. He further found that Plaintiff's range of motion was limited, and doing range of motion aggravated her pain. (Tr. 286-287). He concluded that she has persistent back pain and bilateral trochanteric bursitis. (Tr. 287). Dr. Johnson noted that Plaintiff appeared anxious and slightly flat, and he concluded that she "has severe anxiety and depression." *Id*.

On October 2, 2009, Disability Determination Services ("DDS") file reviewing non-physician, Nancy Makinen, completed a Residual Functional Capacity ("RFC") assessment at the request of SSA. (Tr. 102-109). Plaintiff was diagnosed with bilateral trochanteric bursitis and diabetic sensory neuropathy. (Tr. 102). Plaintiff could occasionally lift/carry 10 pounds, frequently carry less than 10 pounds, stand and/or walk about 2 hours in an 8 hour workday, sit about 6 hours in an 8 hour workday, occasionally climb ladders, ropes, and scaffolds, and should avoid hazards. Plaintiff had no limitations in push-pull, manipulative, visual, or communication activities. (Tr. 103-109).

On October 14, 2009, Kevin Ragsdale, Ph.D., a DDS file reviewing physician, completed a Psychiatric Review at the request of SSA. (Tr. 289-91). It was determined that Plaintiff has mild "restriction of activities of daily living," moderate "difficulties in maintaining social functioning," moderate "difficulties in maintaining concentration, persistence, or pace," and no "episodes of decompression."

On the same day, Dr. Ragsdale completed the Mental RFC Assessment at the request of SSA. (Tr. 289-291). Plaintiff had moderate limitations in the following abilities: "carrying out detailed instructions, maintaining attention and concentration for extended periods, working in coordination with or proximity to others without being distracted by them, interacting appropriately with the general public, accepting instructions and responding appropriately to criticism from supervisors, and getting along with coworkers or peers without distracting them or exhibiting behavioral extremes." *Id*.

On February 1, 2010, Sharon Ames-Dennard, Ph.D. completed a Psychiatric Review of Plaintiff. (Tr. 321-334). Dr. Ames-Dennard concluded that Plaintiff has mild restriction of her activities of daily living, moderate difficulties in maintaining social functioning, moderate difficulties in maintaining concentration, persistence, or pace, and no episodes of decompression. *Id*.

On the same day, Dr. Ames-Dennard completed the Mental RFC Assessment at the request of SSA. (Tr. 335-37). Dr. Ames-Dennard found that Plaintiff had moderate limitations in the following abilities: maintaining attention and concentration for extended periods, completing a normal workday and workweek without interruptions from psychologically based symptoms, performing at a consistent pace without an unreasonable number and length of rest periods, and accepting instructions and responding appropriately to criticism from supervisors. *Id*.

10

On February 24, 2010, a DDS file reviewing non-physician Robert Whittier, completed an RFC Assessment, at the request of SSA. (Tr. 341-348). Mr. Whittier reported that Plaintiff had diagnoses of spondylosis and hip bursitis. (Tr. 341). Mr. Whittier determined that Plaintiff could occasionally lift/carry 20 pounds, frequently lift/carry 10 pounds, stand and/or walk about 2 hours in an 8 hour workday, sit about 6 hours in an 8 hour workday, frequently balance, occasionally climb, stoop, kneel, crouch, crawl, and should avoid concentrated exposure of extreme cold, extreme heat, and hazards. (Tr. 341-348).

## III.     The Five Step Disability Analysis and the ALJ's Findings

Disability is the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 416(i)(1), 423(d)(1)(A); 20 C.F.R. § 404.1505. The impairment must be severe, rendering the claimant unable to perform past relevant work or any other substantial gainful activity which exists in the national economy. 42 U.S.C. § 423(d)(2); 20 C.F.R. §§ 404.1505-404.1511.

The Social Security Administration has established a five-step evaluation process for determining whether an individual is disabled. *See* 20 C.F.R. § 404.1520(a). The steps are followed sequentially. If it is determined that an individual is not disabled at a step of the process, the inquiry will end and the evaluation will not proceed to the next step. *Id*.

### A.     Step One

In Step One, the claimant must prove that he is not undertaking substantial gainful activity. *Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001), *see* 20 C.F.R.

§404.1520(a)(4)(i). If the claimant is engaging in substantial gainful activity, he will be found not disabled. 20 C.F.R. § 404.1520(b).

In the instant case, the ALJ found that Plaintiff met the insured status requirements of the Social Security Act through December 31, 2013, and had not engaged in substantial gainful activity since March 12, 2009, the alleged onset date. (Tr. 13).

### B.     Step Two

In Step Two, the claimant must prove that he is suffering from a severe impairment or combination of impairments. *Doughty*, 245 F.3d at 1278, 20 C.F.R. § 1520(a)(4)(ii). If the claimant's impairment or combination of impairments does not significantly limit his physical or mental ability to do basic work activities, the ALJ will find that the impairment is not severe, and the claimant will be found not disabled. 20 C.F.R. § 1520(c).

Here, the ALJ found that the following limitations affect the Plaintiff's ability to perform basic work functions and are therefore severe: low back pain, diabetes mellitus, diabetic neuropathy, affective mood disorder, and anxiety related disorder. (Tr. 13).

### C.     Step Three

In Step Three, the claimant must prove that his impairment meets or equals one of impairments listed in 20 C.F.R. Pt. 404, Sbpt. P. App. 1. *Doughty*, 245 F.3d at 1278, 20 C.F.R. § 1520(a)(4)(iii). If he meets this burden, he will be considered disabled without consideration of age, education and work experience. *Doughty*, 245 F.3d at 1278.

In the instant case, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments because Plaintiff's mental impairments do not meet or equal the criteria listings of "paragraph B" of 12.04 (affective disorders) or of 12.06 (anxiety related disorders). (Tr. 14).

**D.     Step Four**

If the claimant cannot prove that his impairment meets or equals one of the impairments listed in Appendix 1, he must prove in Step Four that his impairment prevents him from performing his past relevant work. *Id*. At this step, the ALJ will consider the claimant's RFC and compare it with the physical and mental demands of his past relevant work. 20 C.F.R. § 1520(a)(4)(iv), 20 C.F.R. § 1520(f) . If the claimant can still perform his past relevant work, then he will not be found disabled. *Id*.

Here, the ALJ found that Plaintiff has the RFC to perform the full range of light work as defined in 20 C.F.R. § 404.1567(b) and 416.967(b). *Id*. The ALJ used a two-step process. First, the ALJ determined that Plaintiff's medically determinable impairments could reasonably cause the alleged symptoms. *Id*. Second, the ALJ found that Plaintiff's statements concerning the intensity, persistence, and limiting effects of the symptoms were not credible to the extent that they were inconsistent with the RFC assessment. (Tr. 15-16).

The ALJ gave little weight to the evaluations from Dr. Johnson and Dr. Rivera because they were not supported by acceptable clinical findings or treatment notes from other sources. (Tr. 17-18). Each doctor saw Plaintiff only once, and each evaluation was based heavily upon self-reports or subjective allegations of pain. *Id*. Further, no cognitive impairment was notably apparent during either interview. *Id*.

The ALJ gave the opinions from the State agency's physical examiner and the State agency's psychological examiner great weight, as they were consistent with and supported by medical evidence from the record as a whole. (Tr. 18).

The ALJ found that Plaintiff's allegations regarding her RFC assessment were not credible because the medical records did not support her testimony and the medical evidence

failed to confirm the severity of her conditions. *Id.* The ALJ noted that Plaintiff has continued daily activities that one would expect to be limited by the alleged severity of her conditions. *Id.* These include living alone until a roommate was necessary for financial reasons, maintaining personal hygiene, preparing simple meals, completing household chores, driving, shopping, and caring for a pet. *Id.* Furthermore, though Plaintiff received treatment for pain, she was never referred to pain management, nor did she seek treatment from a specialist. *Id.* It seems that her pain was well managed, given the gaps in her treatment history. *Id.* Plaintiff's work history indicates that she stopped working for reasons unrelated to her medical conditions. *Id.* Her employer indicated that she was terminated for lateness and absenteeism. *Id.* She took leave from March 2009 to April 2009, when her doctor reported that she was capable of returning to work. *Id.* The ALJ determined that Plaintiff likely was over-reporting her functional limitations because her allegations of an inability to get along with others, a short attention span, and an inability to follow written instructions were inconsistent with four years of college and a 17-year work history in data entry. *Id.*

Using the findings above, the ALJ determined that Plaintiff could occasionally climb ramps, stairs, ladders, ropes and scaffolds, stoop, kneel, crouch and crawl. (Tr. 15). She should avoid concentrated exposure to extreme cold at heat and hazards such as machinery and unprotected heights. *Id.* The ALJ determined that Plaintiff is moderately limited in her ability to understand, remember and carry out detailed instructions, moderately limited in her ability to maintain attention and concentration for extended periods, and moderately limited in her ability to accept instructions or respond appropriately to criticism from supervisors and get along with coworkers or peers. *Id.*

Using these determinations, the ALJ found that Plaintiff is capable of performing her past relevant work as a data entry clerk, asserting that this work does not require the performance of work-related activities precluded by her RFC. (Tr. 18-19). The Dictionary of Occupational Titles ("DOT") categorizes data entry as semi-skilled work requiring a sedentary exertional level. (Tr. 19). The ALJ found that Plaintiff's ability to perform light work allows her to work at a lesser exertional level, and she does not have a mental impairment or other nonexertional limitations that preclude her from performing semi-skilled work. *Id*. Thus, the ALJ ruled that Plaintiff was not disabled because she could return to her past relevant work. *Id*.

### E.    Step Five

In the Step Five, the burden shifts to the Commissioner to prove that the claimant is capable of performing other work available in the national economy, considering the claimant's RFC, age, education, and past work experience. *Doughty*, 245 F.3d at 1278, 20 C.F.R. § 1520(a)(4)(v). If the claimant is capable of performing other work, she will be found not disabled. *Id*. In determining whether the Commissioner has met this burden, the ALJ must develop a full and fair record regarding the vocational opportunities available to the claimant. *Allen v. Sullivan*, 880 F.2d 1200, 1201 (11th Cir. 1989). There are two ways in which the ALJ may make this determination. The first is by applying the Medical Vocational Guidelines ("grids"), and the second is by the use of a vocational expert. *Phillips v. Barnhart*, 357 F.3d 1232, 1239 (11th Cir. 2004).

The grids are contained within the Social Security regulations, 20 C.F.R. Pt. 404, Subpt. P, App. 1, and may allow claimants to qualify for disability benefits when their impairments do not meet or equal the listed qualifying impairments. *Id.* at 1240. The ALJ may use the grids to apply the claimant's background to factors such as RFC, age, education, past work experience,

and fluency in English. *Id*. The grids direct a statutorily-required finding of "Disabled" or "Not Disabled" accordingly. *Id*.

The other means by which the ALJ may make the determination in Step Five is by use of a vocational expert ("VE"). *Id*.  A VE provides expertise regarding the kinds of jobs that are within an individual's capacity. *Id*. The ALJ will pose hypothetical questions to the VE to determine whether someone with the claimant's previously determined limitations will be able to secure employment in the national economy. *Id*.

In the instant case, the ALJ found that, in the alternative, considering the RFC, age, education and work experience in conjunction with the grids, Plaintiff would be able to perform other jobs existing in the national economy. (Tr. 19). The ALJ used only the grids in Step Five and did not rely on a vocational expert. Therefore, the ALJ considered: (1) Plaintiff's RFC to perform the full range of light work; (2) that Plaintiff was 46 years old; (3) that Plaintiff had a completed a four-year bachelor's degree program; and (4) Plaintiff's prior work experience. The combination of these factors under the grids led to the conclusion that Plaintiff was not disabled.

## IV. Specific Issues and Conclusions of Law

Plaintiff raises two issues on appeal. First, she asserts that the ALJ's finding that Plaintiff can perform her past relevant work as a data entry clerk is not supported by substantial evidence. Second, she argues that the ALJ erred by failing to elicit testimony from a VE regarding compromises to Plaintiff's exertional base.

### A.      Whether there was Substantial Evidence to Support the ALJ's Finding that Plaintiff could Perform her Past Relevant Work

The ALJ determined in Step Four that the limitations identified in the RFC did not prevent Plaintiff from returning to data entry work; therefore, she was not disabled. Plaintiff does not contend that the ALJ's evaluation of Plaintiff's RFC was inaccurate. Instead, Plaintiff argues

that the ALJ's decision cannot stand because it is unclear how he reached the decision that Plaintiff can do her past relevant work. Plaintiff further asserts that the ALJ erred by failing to explain how someone with her RFC could perform the semi-skilled job of a data entry clerk.

At this step, the ALJ must consider all of the physical and mental requirements of a claimant's past relevant work and determine the claimant's ability to perform those duties despite these impairments. *Lucas v. Sullivan*, 918 F.2d 1567 (11th Cir. 1990). This analysis must include a detailed description of the required duties in order to determine whether claimant has the RFC to perform her past relevant work. *Schnorr v. Bowen*, 816 F.2d 578, 581 (11th Cir. 1987). Furthermore, the ALJ must state the reasons for his decision with sufficient clarity to allow the Court to conduct a meaningful review. *Owens v. Heckler*, 748 F.2d 1511, 1516 (11th Cir.1984).

In the case at bar, the ALJ found that Plaintiff was moderately limited in her ability to understand, remember, and carry out detailed instructions, moderately limited in her ability to maintain attention and concentration for extended periods, and moderately limited in her ability to a accept instructions or respond appropriately to criticism from supervisors and get along with peers. (Tr. 15). The ALJ failed to discuss the specific duties required for a data entry clerk position and how or whether Plaintiff could fulfill those responsibilities given her limitations. He simply made a conclusory finding that Plaintiff "does not have a mental impairment or other nonexertional limitations that preclude her from performing semi-skilled work." (Tr. 19). The ALJ failed to explain why the nonexertional limitations he included in his RFC do not preclude Plaintiff from returning to her past relevant work. Therefore, the Court is unable to conduct a meaningful review of the ALJ's findings at Step Four. The Court finds that the ALJ's finding at

Step Four that Plaintiff could return to her past relevant work was not supported by substantial evidence.

If the ALJ had finished his review at Step Four of the analysis, this error would require reversal and remand for additional consideration, and this Court's review would conclude. *Akins v. Comm'r of Soc. Sec.*, 608-CV-1575-ORL-DAB, 2009 WL 2913538, at *4 (M.D. Fla. Sept. 10, 2009). However, the ALJ continued his analysis, finding that Plaintiff was not disabled at Step Five. If this alternative finding is supported by substantial evidence, the error in Step Four is harmless. *Id*. Thus, the Court must evaluate the alternative finding.

### B. Whether the ALJ Erred by Failing to Elicit Testimony from a Vocational Expert Regarding Compromises to Plaintiff's Exertional Base

Alternatively, the ALJ found that Plaintiff is capable of performing other work available in the national economy using the grids. Plaintiff's nonexertional limitations included moderate limitation in her ability to understand, remember, and carry out detailed instructions, moderate limitation in her ability to maintain attention and concentration for extended periods, and moderate limitation in her ability to accept instructions or respond appropriately to criticism from supervisors and get along with peers. (Tr. 15). Plaintiff argues that the ALJ was required to consult with a vocational expert at Step Five because Plaintiff's severe mental impairments of affective mood disorder and anxiety related disorder are nonexertional limitations that significantly limit her basic work skills under 20 § C.F.R. 416.920(c).

"Exclusive reliance on the grids is not appropriate *either* when [the] claimant is unable to perform a full range of work at a given residual functional level *or* when a claimant has non-exertional impairments that significantly limit basic work skills." *Phillips v. Barnhart*, 357 F.3d 1232, 1242 (11th Cir. 2004) (emphasis in original) (citing *Broz v. Schweiker*, 677 F.2d 1351, 1361 (11th Cir. 1982), *adhered to sub nom. Broz v. Heckler*, 711 F.2d 957 (11th Cir. 1983)). In

18

almost all of such cases, the Commissioner must use the testimony of a VE. *Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995); *see also MacGregor v. Bowen*, 786 F.2d 1050, 1054 (11th Cir. 1986) (when nonexertional limitations are alleged, the preferred method of demonstrating that Plaintiff can perform specific work is through the testimony of a VE). Only if it is clear that a claimant can do unlimited types of work at a given residual functional level is the VE's testimony unnecessary. *See Allen v. Sullivan*, 880 F.2d at 1202.

In the instant case, the ALJ determined that Plaintiff is able to perform a full range of light work. However, he failed to determine whether his finding that Plaintiff had nonexertional limitations significantly limited Plaintiff's ability to perform a full range of light work. A person with moderate limitations in following instructions, maintaining concentration and getting along with others may be unable to perform any occupation requiring only light work; therefore, the testimony of a VE is necessary. The ALJ must establish whether there is a wide range of jobs in the national economy that Plaintiff can perform with her nonexertional impairments. *See Foote* 67 F.3d at 1559. The ALJ must address and resolve this question by use of a VE's testimony and must not rely solely on the grids. *Phillips*, 357 F.3d at 1242.

The ALJ erred by failing to elicit testimony of a VE to determine whether Plaintiff's nonexertional limitations preclude her from performing a full range of light work jobs that are available in the national economy.

## IV.    Conclusions

For the foregoing reasons, the ALJ erred in failing to consider Plaintiff's limitations at Step Four and by failing to obtain the testimony of a VE at Step Five. Therefore, it is respectfully recommended that the decision of the Commissioner be **REVERSED** and **REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g).

19

Failure to file written objections to the proposed findings and recommendations contained in this report within fourteen (14) days from the date of its filing shall bar an aggrieved party from attacking the factual findings on appeal.

**Respectfully recommended** in Chambers in Ft. Myers, Florida this 20th day of August, 2013.

DOUGLAS N. FRAZIER
UNITED STATES MAGISTRATE JUDGE

Copies: All Parties of Record